## FEDERAL DEPOSIT INS. CORPORATION v. WINTON et al.

### No. 9154.

Circuit Court of Appeals, Sixth Circuit.

Dec. 2, 1942.

James M. Kane, of Washington, D. C. (Francis C. Brown, W. J. Price, and Carl A. Landis, all of Washington, D. C., and J. Roy Hickerson, of Winchester, Tenn., on the brief), for appellant.

Chester C. Chattin, of Winchester, Tenn., for appellees.

Before HICKS, SIMONS, and MARTIN, Circuit Judges.

HICKS, Circuit Judge.

Prior to April 1, 1938, the Home Bank & Trust Company, a banking corporation under the laws of Tennessee, located at Winchester and herein called the Bank, was insured under the provisions of Sec. 12B of the Federal Reserve Act (Sec. 8 of the Act of June 16, 1933, 48 Stat. 168 as amended by Sec. 101 of the Act of August 23, 1935, 49 Stat. 684, 12 U.S.C.A. § 264.) On March 31, 1938, the Federal Deposit Insurance Corporation, herein called the F. D. I. C., terminated the insured status of the Bank, although it continued in business until August 18, 1938, when it was closed by an insolvency proceeding in the State Chancery Court. When the Bank's insured status was terminated, appellees and other depositors had therein time deposits, which remained in the Bank until it closed. They also had, along with other depositors, ordinary checking accounts into which they made deposits and from which they withdrew moneys between the dates of March 31, 1938, and August 18, 1938.

In its attempted settlement with the depositors, the F. D. I. C. proposed to deduct from their total deposits as of March 31, 1938, including both checking accounts and time deposits, all checks drawn against the checking accounts of such depositors between the above mentioned dates without regard to additions which were in the meantime made to the checking accounts. Following the closing of the Bank, appellees began an action against F. D. I. C. in the State Chancery Court, in which they sought an accounting showing the balances due them as depositors and a decree against F. D. I. C. for the insured amounts thereof. Thereupon, F. D. I. C. instituted this suit against appellees, Mrs. Mary Winton and A. Sanders, individually and as representatives of a class similarly situated, for a declaratory judgment under the Federal Declaratory Judgment Act, Sec. 274(d) of the Judicial Code, as amended by c. 512 of the Act of June 14, 1934, 48 Stat. 955 and c. 829, Sec. 405 of the Act of Aug. 30, 1935, 49 Stat. 1027, 28 U.S.C.A. § 400, to determine the extent of its liability as an insurer of deposit liabilities of the Bank.

The case is one of first impression and requires a review of certain portions of subsection (i) (1) of Sec. 12B of the amended Federal Reserve Act hereinabove cited. The applicable portions of subsection (i) (1) are as follows:

" * * * After the termination of the insured status of any bank under the provisions of this paragraph, the insured deposits of each depositor in the bank on the date of such termination, *less all subsequent withdrawals from any deposits of such depositor,* shall continue for a period of two years to be insured, and the bank shall continue to pay to the Corporation assessments as in the case of an insured bank during such period. No additions to any such deposits and no new deposits in such bank made after the date of such termination shall be insured by the Corporation, and the bank shall not advertise or hold itself out as having insured deposits unless in the same connection it shall also state with equal prominence that such additions to deposits and new deposits made after such date are not so insured." (Italics added.)

It is uncontroverted that at the termination of the insured status of the Bank, the insured deposits, less certain withdrawals, continued to be insured for a period of two years; that the maximum insurable amount is measured by the aggregate total of all deposits, checking or otherwise (up to $5,000.00), standing to the credit of each depositor as of the date the insured status terminated; and that this maximum cannot be increased by deposits made after the termination date.

The question here is, whether or not withdrawals from fresh deposits made after the termination of the insured status of the Bank are to be charged against the insured deposits. Appellees' contention is

that such withdrawals must first be charged to the fresh deposits made after the termination date, leaving the maximum insured total unaffected and undiminished until an amount greater than the amount of the fresh deposits is withdrawn. The District Court sustained appellees' contention.

The court took the view that the Act was designed to prevent runs on banks and to keep open the channels of trade and exchange by preserving the solvency of insured banks; that the clauses under scrutiny were intended to extend the insurance in a limited way after the bank was in a precarious condition, and to give it an opportunity to rehabilitate itself, and that if withdrawals from a bank whose insured status was terminated, but for the two year extension, were chargeable to the insured deposits of a depositor rather than to the fresh deposits, there could be little probability of new business and a strong probability of a run.

■■■ In our view of the case we are not required to determine whether the interpretation placed by the court upon Clause (i) (1) of 12B of the Act would tend to prevent contemplated evils because we find no room for interpretation or construction at all. The words "less all subsequent withdrawals from any deposits of such depositor" as they appear in the italicized portion of the statute quoted are plain, simple and explicit. There is nothing doubtful about their meaning. The obvious meaning of the entire phrase, and one that is supported by Webster's definition of the word "any" as "one indiscriminately of *whatever kind* or quantity" [italics added], is that after the date of termination F. D. I. C.'s liability would be reduced by every withdrawal from deposits of the depositor of whatever kind and whenever made. There is no room for the construction of an unambiguous statute; not even where the purpose is to remove an apparent hardship. Helvering v. New York Tr. Co., 292 U.S. 455, 464, 54 S.Ct. 806, 78 L.Ed. 1361; United States v. Missouri Pac. R. Co.; 278 U.S. 269, 277, 49 S.Ct. 133, 73 L.Ed. 322; Corona Coal Co. v. U. S., 263 U. S. 537, 540, 44 S.Ct. 156, 68 L.Ed. 431; Standard Oil Co. v. Fitzgerald, 6 Cir., 86 F.2d 799, 802.

■■■ The power and authority of F. D. I. C. to terminate the insured status of the Bank is not questioned. The legality of the termination is not challenged—the termination was in fact both justified and appropriate. In such case the insurance upon the depositors' deposits of whatever character on the date of such termination was continued for two years, but upon such conditions as the statute imposed. If this condition created a hardship either upon the Bank or its depositors, the remedy was by legislation, and construction by the courts may not be substituted therefor. United States v. Missouri Pac. R. Co., supra, 278 U.S. page 277, 49 S.Ct. 133, 73 L.Ed. 322.

■■■ We find no injustice in the conclusion here reached. F. D. I. C. gave notice to each depositor of the termination of the insured status of the Bank, and in addition, notice was published in two newspapers of general circulation in Winchester, the county seat of Franklin County, Tennessee. The notices recited that the Bank had continued unsafe and unsound practices and had knowingly and negligently permitted its officers to violate the provisions of the state law and the regulations of F. D. I. C. Then following the words, "Please Take Notice," were paragraphs of utmost importance to depositors, to wit:

"(b) That any deposit made in said bank on or after April 1, 1938, will not be insured;

"(c) That such deposits as you may have in said bank as of the close of business on March 31, 1938, up to $5,000 will continue for a period of two years to be insured; provided, however, that any withdrawals you may make on or after April 1, 1938, from any deposits in said bank will be subtracted from your insured deposits or the insured portion of your deposits."

Depositors could not be misled by this language into continuing business with the Bank except at their own risk. If disaster befell them, it was self-invited.

The judgment of the District Court is reversed and the case remanded with directions to enter a decree consistent herewith.